### RUDEBECK et al. v. SANDERSON et al.

### In re NONPAREIL CONSOL. COPPER CO.

(Circuit Court of Appeals, Ninth Circuit. November 8, 1915.)

### No. 2624.

1. BANKRUPTCY ☞43—CORPORATIONS—POWER OF DIRECTORS TO AUTHORIZE VOLUNTARY PETITIONS.

In the absence of any restrictive provision in the laws of the state or in its charter, the board of directors of a corporation may authorize the filing of a petition in voluntary bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 38; Dec. Dig. ☞43.]

2. BANKRUPTCY ☞43—CORPORATIONS—MOTION TO DISMISS PROCEEDINGS—LACHES.

Stockholders, who with knowledge of the filing of a voluntary petition in bankruptcy by a corporation have permitted the administration of the estate to proceed for fifteen months, cannot then object on the ground that the petition was not duly authorized.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 38; Dec. Dig. ☞43.]

Petition for Review from the District Court of the United States, for the Northern Division of the Western District of Washington; Edward E. Cushman, Judge.

In the matter of the Nonpareil Consolidated Copper Company, bankrupt, with W. P. Sanderson as trustee. From an order dismissing their petitions to vacate the adjudication, N. Rudebeck, R. H. Ramsay, and Dora A. Ramsay petition for review. Affirmed.

E. H. Guie and J. A. Guie, both of Seattle, Wash., for petitioners. Wm. Hickman Moore, of Seattle, Wash., for respondents.

Before GILBERT and ROSS, Circuit Judges, and RUDKIN, District Judge.

RUDKIN, District Judge. The Nonpareil Consolidated Copper Company, a Washington corporation, filed its voluntary petition in bankruptcy in the court below on the 28th day of February, 1914. The petition averred, among other things:

That the corporation "had its principal office for the greater portion of six months next immediately preceding the filing of this petition at 410 American National Bank Building, Everett, Wash., within said judicial district; that it owes debts which it is unable to pay in full; that it is willing to surrender all its property for the benefit of its creditors, except such as is exempt by

law, and is desirous of obtaining the benefits of the acts of Congress relating to bankruptcy, *and its board of directors has duly authorized such acts on its part.*"

The petition was verified by the president of the corporation, who made oath that he was duly authorized by resolution of the board of trustees of the corporation to execute the petition for and in its behalf for the purposes therein set forth. On the 4th day of March, 1914, the prayer of the petitioner was granted, and the order of adjudication followed. The matter was then referred to the referee, appraisers were appointed, and costs of administration were ordered paid from time to time. On the 24th day of June, 1915, one Rudebeck, a stockholder of the corporation, filed a petition to vacate and set aside the order of adjudication, and to restrain the referee and trustee from selling or otherwise disposing of the assets of the corporation. A similar petition was filed by one R. H. Ramsay, another stockholder on the 29th day of June, 1915, and an intervening petition by one Dora A. Ramsay, another stockholder, on the 8th day of July, 1915. After the filing of the first two petitions, on the 29th day of June, 1915, the court made an order restraining the referee and trustee from executing a deed of the assets of the corporation, which had already been sold, until a hearing could be had on the 7th day of July, 1915. On the 6th day of July, 1915, a motion to dismiss the petitions and the petition in intervention was filed by the trustee, and on the 8th day of July, 1915, the motion to dismiss was granted, and the restraining order dissolved. The present petition was thereupon filed for a revision of the order dismissing the petitions and dissolving the restraining order.

[1] The petitions and intervening petition to vacate the order of adjudication were interposed on the ground that the filing of the voluntary petition was not authorized by vote of the stockholders of the company.

"The power of a corporation to execute and file a voluntary petition may be exercised by the same officers who have power under the laws of the state in which it is chartered to make a general assignment for the benefit of creditors or to convey or mortgage corporate property. In the absence of statute or by-laws regulating the subject, such power resides in the board of directors. It may be said generally that the president or other officer of a corporation has not the power on his own authority to execute a voluntary petition, but the board of directors may authorize the corporate officer to execute and file a petition on behalf of the corporation. In some states the general power of alienation is restrained either by the particular act creating the corporation or by general statute. In states where a vote of the stockholders is required to authorize a general assignment, or to convey or mortgage corporate property, a vote of the stockholders is necessary to authorize the corporation to file a voluntary petition in bankruptcy." Loveland on Bankruptcy (4th Ed.) 339.

The rule that the power to authorize the filing of a petition in bankruptcy is vested in the board of trustees or directors, in the absence of statute or by-laws regulating the subject, is fully supported by the authorities. In re Lisk Mfg. Co. (D. C.) 167 Fed. 411; In re Moench & Sons, 130 Fed. 685, 66 C. C. A. 37; In re Mutual Mercantile Agency Co. (D. C.) 111 Fed. 152; Cresson, etc., Coke Co. v. Stauffer, 148 Fed. 981, 78 C. C. A. 609; In re Marine Machine & Conveyor Co. (D. C.)

91 Fed. 630; In re Kelly Dry Goods Co. (D. C.) 102 Fed. 747; In re Rollins Gold & Silver Mining Co. (D. C.) 102 Fed. 982; Dodge v. Kenwood Ice Co., 204 Fed. 577, 123 C. C. A. 103.

The public statutes of Massachusetts provide that no conveyance or mortgage of its real estate, or lease thereof for more than one year, shall be made by a corporation unless authorized by a vote of the stockholders at a meeting called for that purpose, and that corporations may apply by petition, signed by an officer duly authorized by a vote of a majority of the incorporators present and voting at a legal meeting called for that purpose, for the initiation of proceedings in insolvency against the corporation. By reason of these statutory provisions, it was held in Re Bates Machine Co. (D. C.) 91 Fed. 625, that the board of directors of a Massachusetts corporation could not commit an act of bankruptcy by written admission of the corporation's inability to pay its debts and its willingness to be adjudged a bankrupt on that ground, but that such admission must be authorized by the stockholders.

The Oregon statute (L. O. L. § 6701) provides that:

"Any corporation organized under the provisions of this chapter [pertaining to private corporations] may, at any meeting of the stockholders which is called for such purpose, by vote of the majority of the stock of any such corporation, increase or diminish its capital stock, or the amount of the shares thereof, or authorize the dissolution of such corporation, and the settling of its business and disposing of its property and dividing its capital stock in any manner it may see proper."

In Re Quartz Gold Mining Co. (D. C.) 157 Fed. 243, it was held that by reason of the provision authorizing the stockholders of a private corporation to institute proceedings for its dissolution, the settling of its business, and the disposing of its property, the stockholders alone could commit an act of bankruptcy, by admitting in writing the corporation's inability to pay its debts and its willingness to be adjudged a bankrupt on that ground. The latter decision was affirmed by this court in Van Emon v. Veal, 158 Fed. 1022, 85 C. C. A. 547. It was conceded in these cases, however, that the general rule is otherwise. Thus, in the Bates Machine Company Case, Judge Lowell said:

"At this time, however, it is pretty well settled by authority that, under ordinary statutes or charters, the authority to make a general assignment does inhere in a board of directors. See Thomp. Corp. § 6473, Mor. Priv. Corp. § 240, Ang. & A. Corp. (11th Ed.) § 299, and the cases cited in these text-books."

Indeed, such power in the board of trustees seems to be tacitly recognized by the Supreme Court of the state of Washington in Nyman v. Berry, 3 Wash. 734, 29 Pac. 557, McKay v. Elwood, 12 Wash. 579, 41 Pac. 919, and Cerf & Co. v. Wallace, 14 Wash. 249, 44 Pac. 264. It is stated in one of the opinions that the assignment was authorized by vote of the stockholders, but no importance seems to have been attached to this allegation. If the board of trustees may make a general assignment for the benefit of creditors, the board may also file a voluntary petition in bankruptcy, for the result is the same, whether the property of the corporation is turned over for the benefit of creditors under the one proceeding or the other.

227 F.—37

We find no restrictive provisions in the laws of the state of Washington such as exist in the laws of Massachusetts and Oregon. Section 3704 of Rem. & Bal. Code provides for increasing or diminishing the capital stock of a corporation, when authorized by a vote of two-thirds of all the shares of the company; but that provision has no bearing upon the question now under consideration. Section 3708 of the same Code provides for the dissolution of corporations when. authorized by vote of two-thirds of all the stockholders; but a corporation can only be dissolved under that section when the court is satisfied that all claims against it have been discharged, and the statute can have no application to insolvent concerns. Furthermore, a corporation is not dissolved by a general assignment, or by bankruptcy proceedings, unless the state statute expressly so provides. True, the dissolution of a corporation, or an abandonment of the corporate enterprises, often follows insolvency, but not as a legal consequence. The board of trustees are the managing agents of the corporation, they are familiar with its affairs, and when the corporation becomes insolvent its assets become a trust fund for the payment of creditors. It is the duty of the trustees to see that this trust fund is not dissipated, and the filing of a voluntary petition in bankruptcy is an appropriate means to that end. We are therefore of opinion that the filing of the voluntary petition in this case was authorized by competent authority.

[2] But in any event the petition for revision should be dismissed. As already stated, the adjudication was made on the 4th day of March, 1914, and the first petition to vacate the order was not filed until the 24th day of June, 1915. The petitioner Rudebeck had notice of the adjudication as early as March 23, 1914, because on that date he filed his claim against the corporation with the referee in bankruptcy. When the other petitioners received notice of the adjudication does not appear; but they could not stand idly by and permit the administration of the estate to proceed in the bankruptcy court until some step was taken that did not meet their approval. Whether the petition in bankruptcy was filed by competent authority or not, it was the duty of the petitioners to move against it promptly, if at all, and this they failed to do. In re First National Bank, 152 Fed. 64, 81 C. C. A. 260, 11 Ann. Cas. 355; In re Ives, 113 Fed. 911, 51 C. C. A. 541; In re Urban & Suburban Realty Co. (D. C.) 132 Fed. 140.

The petition for revision is dismissed, with costs to the respondents.